UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARTHA KEEN STOVALL, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR COOPER,<br><br>    Defendant. | Case No.: 21-cv-2735<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

# INTRODUCTION

1. This class action seeks redress for mortgage servicing practices that violate the Real Estate Settlement Procedures Act and its implementing regulations, 12 U.S.C. § 2601 *et seq.* ("RESPA") and 12 C.F.R. § 1024 *et seq.* ("Regulation X"), the Electronic Funds Transfer Act and its implementing regulations, 15 U.S.C. § 1693 *et seq.* (the "EFTA") and 12 C.F.R. § 1005 *et seq.* ("Regulation E"), the North Carolina Mortgage Debt Collection and Servicing Act, N.C. Gen. Stat. § 45-90 et seq. ("NCMDCSA"), and state law.

# JURISDICTION AND VENUE

2. The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 12 U.S.C. § 2614, 15 U.S.C. § 1693m, and 28 U.S.C. §§ 1331, 1337, and 1367. The court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1331(d) ("CAFA"), because this is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

3. Venue in this District is proper in that Defendant maintains its primary place of business within this District.

**PARTIES**

4. Plaintiff Stovall is and, at all relevant times hereto, has been a citizen and resident of North Carolina.

5. Plaintiff is a "borrower" as used in RESPA and Regulation X and a "consumer" as defined in the EFTA and Regulation E in that Plaintiff is a natural person obligated under a federally related mortgage loan.

6. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") is a foreign limited liability company with its principal offices located at 8950 Cypress Waters Boulevard, Dallas, Texas 75019.

7. Nationstar does business under the fictitious or trade name "Mr. Cooper."

8. Nationstar is a "servicer" as defined by RESPA, Regulation X, and the NCMDCSA in that Nationstar is responsible for the servicing of federally related mortgage loans by receiving scheduled period payments pursuant to their terms, and making payments to the owner of the loan or other third parties of principal and interest.

9. Nationstar is one of the largest mortgage servicers in the United States. *See, e.g.,* https://www.housingwire.com/articles/42231-big-banks-release-their-hold-on-mortgage-servicing-industry (accessed November 1, 2021) ("The largest non-bank servicer, Nationstar Mortgage, which now does business as Mr. Cooper, continued its acquisition activity through the year, growing 7.6% over the year, according to Fitch's report.").

10. Nationstar is a designated payee as used in the EFTA, 15 U.S.C. § 1693e(b), in that Nationstar regularly initiates and receives electronic fund transfers from borrowers' accounts that

12

are preauthorized or purportedly preauthorized and recur at regularly scheduled intervals contemplated by the terms of the mortgage agreements that Nationstar services.

11. Upon information and belief, Nationstar services not less than hundreds of thousands of loans throughout the United States, including Plaintiff's and Class Members' mortgage loans.

12. When Nationstar acquires the servicing rights to a particular loan portfolio, many of the loans, if not the majority of the loans, contained in that portfolio are delinquent when Nationstar acquires the rights to the portfolio.

13. Nationstar directly or indirectly uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts that are owed to others and delinquent when Nationstar begins servicing the account. Nationstar's primary purpose is debt collection. *See, e.g., Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017).

## FACTS

14. This action, brought by Stovall on behalf of others similarly situated, seeks to obtain redress for Defendant's improper, automatic withdrawals of enormous sums of money from the bank accounts of nearly half a million people nationwide, including Stovall.

15. Specifically, Nationstar initiated unauthorized debits of mortgage payments from borrowers' bank accounts; withdrawing multiple months of payments simultaneously from their customers without notice or authorization to do so. These withdrawals led to significant overdraft fees and left borrowers such as Plaintiff with reduced (or zero) purchasing power while they waited for Nationstar to correct its errors.

12

16. These withdrawals also caused borrowers emotional distress, anxiety, and worry as a result of third parties being able to obtain unauthorized access and transfer of their hard-earned funds.

17. Nationstar allows borrowers such as Plaintiff to authorize Nationstar to initiate automatic, recurring payments (electronic funds transfers, or "EFTs" under the EFTA) on a schedule chosen by the consumer.

18. This process is generally initiated through an Automatic Clearing House ("ACH") debit transaction from the Borrower's financial institution.

19. Parties such as Nationstar who initiate these monthly debit transactions are commonly referred to as "Originators."

20. Originators initiate an ACH transfer through their Originating Depository Financial Institution ("ODFI"), or a third-party agent. Originators and ODFIs occasionally contract with third parties to act as their agents associated with these transfers.

21. Borrowers such as Plaintiff are commonly referred to as "Receivers," in that their Receiving Depository Financial Institution ("RDFI") receives the ACH transfer request from the ODFI.

22. Upon information and belief, most consumers who consent to such electronic payments, authorize Nationstar to electronically withdraw the amount of the required monthly payment for the consumer's loan once per month. Some consumers elect to have EFT payments debited bi-weekly or semi-monthly, generally depending upon when the consumer is paid.

23. Upon information and belief, Nationstar, or its agents, typically will submit a batch file (or files) through the ACH network to initiate debits from its borrowers' accounts.

24. Each borrower who is making payments pursuant to a mortgage note should

only appear on one batch file per month, on a pre-ordained schedule authorized by the borrower.

25.   However, in April 2021, Nationstar submitted hundreds of thousands of improper ACH debit requests. For example, Nationstar, or its agents, initiated three debit requests to Plaintiff Stovall's RDFI on or about April 24, 2021, which were processed on April 26, 2021. Upon information and belief, some borrowers had as many as six ACH debit requests to their bank.

26.   Even though Stovall had not preauthorized Nationstar to initiate ACH requests on a set schedule, Stovall's RDFI allowed Nationstar's ODFI (or agent) to pull money from her account. In Stovall's case, around $2,066.25 was taken, equivalent to more than three monthly mortgage payments. Stovall did not authorize any of these transfers.

27.   Upon information and belief, tens of thousands of similarly situated Plaintiffs also experienced unauthorized ACH debits on their account.

28.   Nationstar unlawfully collected tens of thousands of unauthorized mortgage loan payments.

29.   Nationstar (or its agents) failed to have measures in place to ensure that pre-authorized monthly transactions only occurred *monthly*.

30.   Nationstar (or its agents) failed to have measures in place to identify significant abnormalities in its ACH debit transactions *prior* to 'settlement' of the transaction; *i.e.* when the money leaves the borrower's bank account and goes to Nationstar.

31.   Nationstar or its agents failed to have measures in place to identify an out-of-control run on ACH debit transactions prior to settlement of these transactions.

32. The National Automated Clearing House Association ("NACHA") has promulgated "Operating Rules," which the NACHA describes as "the foundation for every ACH payment" because they define the roles and responsibilities of financial institutions and establish clear guidelines for each participant in ACH transfers and help "ensure that millions of payments occur smoothly and easily each day."

33. Upon information and belief, Nationstar or its agents did not comply with the NACHA Operating Rules and the federal regulations and guidelines that govern ACH transactions, including the EFTA and Regulation E.

34. Instead, Nationstar repeatedly collected mortgage debt that it was not authorized to collect.

35. In the case of Plaintiff, Nationstar collected *at least* three unauthorized mortgage payments which it was not authorized to collect.

36. As a result of these unauthorized transfers, Plaintiff and other Class Members have experienced and continue to experience heightened anxiety, stress, anger, frustration, and other mental anguish that is fairly traceable to Nationstar's unauthorized withdrawal of monies from their bank accounts.

37. Plaintiff and other class members have also been deprived of purchasing power and interest that may have accrued on their funds.

38. Upon information and belief, Nationstar was unjustly enriched by accruing interest on the unauthorized withdrawals.

39. Nationstar, *inter alia*, has also violated Plaintiff and other borrowers' substantive rights to be free from unlawful debt collection and account servicing practices, infringed upon

12

their ability to make informed decisions regarding their finances, and caused their accounts to incur overdraft fees and reduced purchasing power.

### *Plaintiff's Account History*

40. Plaintiff, like virtually every other residential loan borrower, did not "choose" to have her mortgage loan serviced by Nationstar.  Indeed, Plaintiff's mortgage was originally serviced by another servicer and Nationstar subsequently acquired the servicing rights to Plaintiff's mortgage through unilateral decision-making by the prior servicer, the holder of the note, and/or Nationstar.

41. Plaintiff regularly authorizes Nationstar to initiate electronic funds transfers to make her monthly mortgage loan payment.

42. At the time of authorization, Plaintiff provides Nationstar with consent to withdraw money electronically from Plaintiff's checking account.  Each withdrawal is an "electronic fund transfer" pursuant to 15 U.S.C. § 1693a(7).  These withdrawals recur at regular intervals consonant with the terms of the mortgage loan agreement.

43. As a result, Nationstar was a "designated payee" as that term is used in the EFTA.

44. Each EFT payment was in the amount of Plaintiff's monthly mortgage payment, as authorized by Plaintiff.

45. For example, Nationstar received an electronic funds transfer in the amount of $688.75 on April 16, 2021.

### *Nationstar Initiates Three Duplicate Payments between April 24 and 26, 2021*

46. Although Plaintiff had already made her monthly mortgage payment in the amount of $688.75 on April 16, 2021, Nationstar initiated three additional payments – each also in the amount of $688.75 – sometime between April 24, 2021 and On April 26, 2021.

47. As Nationstar had already debited and received Plaintiff's mid-April 2021 payment on April 16, 2021, the next scheduled monthly payment was not due for several weeks. Nationstar did not have authorization to initiate another payment in April 2021.

48. Plaintiff did not execute a modification or agree to modify the terms of the existing EFT authorization agreement that they had entered with Nationstar, and pursuant to which Nationstar had been regularly making electronic funds transfers.

49. Notwithstanding that Plaintiff did not execute a modification or agree to modify the terms of the existing EFT authorization agreement and that Plaintiff's payment had already been made, Plaintiff discovered on April 26, 2021, that Nationstar initiated three unauthorized electronic funds transfers from her checking account. Nationstar "reversed" these payments by initiating electronic funds transfers to Plaintiff's account on April 26, 2021.

50. Several days letter, Plaintiff received a letter from Nationstar, attached to this complaint as <u>Exhibit A</u>, that was, upon information and belief, in a template form also mailed to tens if not hundreds of thousands of other borrowers, with the title:

**MULTIPLE PAYMENT PROCESSING ISSUE: WE OWE YOU AN EXPLANATION**

51. The letter further stated that Nationstar had "launched a full investigation to get to the bottom of what happened."

*Nationstar Previously Debited Multiple Payments From Plaintiff's Account*

52. This was not the first time that Nationstar improperly initiated multiple EFT payments from Plaintiff.

53. On or about March 16, 2017, Nationstar initiated an improper electronic funds transfer from Plaintiff's account in the amount of $700.00. The improper transfer was reversed on or about March 21, 2017.

12

54. On November 16, 2020, Nationstar initiated two EFT payments from Plaintiff's account. A copy of the portion of Plaintiff's Nationstar transaction history covering February 17, 2020 through January 11, 2021, is attached as Exhibit B.

55. During a Pay by Phone transaction on November 15, 2020 when Plaintiff called to confirm her mortgage payment which was recurring at regular intervals, Plaintiff received an error message stating that Nationstar's electronic payment system was down. She called back later to complete the confirmation.

56. Plaintiff's monthly payment at the time was $1,004.01. The double payment deducted a total of $2,008.02 from Plaintiff's checking account.

57. Not only was this double payment unauthorized, it was also processed incorrectly.

58. Exhibit B indicates that the first $1,004.01 payment on November 16, 2020 was applied to the payment due on November 1, 2020 and was broken down as $323.60 to "principal," $365.15 to "interest," and $315.26 to "escrow":



59. Exhibit B indicates that the second $1,004.01 payment on November 16, 2020 was applied to the payment due on December 1, 2020 and was broken down as $323.32 to "principal," $363.43 to "interest," and $315.26 to "escrow":



60. Plaintiff was current on her Nationstar loan. The transaction history does not indicate any late fees throughout the period covered in Exhibit B.

61. The amount of the second payment applied to interest is incorrect.

62. No interest actually accrued in the brief moment of time between the two payments.

63. If the Plaintiff had, intentionally or accidentally made a second payment, all of the second payment should have been applied to principal. No interest had accrued, the current monthly escrow payment had been satisfied, and there were no outstanding fees.

64. Indeed, the improper payment in March 2017 was applied to the principal of the loan.

65. Instead of returning the improper payment or applying it to principal, Nationstar applied the payment to the "December 1, 2020" payment, which Plaintiff would normally have paid on or around December 15, 2020, at the end of the grace period. *See* Exhibit B.

66. Plaintiff contacted Nationstar on numerous occasions to correct the payment processing error. Nationstar failed to do so.

67. Plaintiff also contacted Nationstar on numerous occasions regarding duplicate payment issues, and requested that Nationstar ensure that further duplicate payment errors would not occur. Nationstar failed to do so. Indeed, Nationstar did not even attempt to "get to the bottom" of its duplicate payment issues until after it initiated duplicate payments from half a million borrowers throughout the United States.

### *RESPA*

68. Congress passed the Real Estate Settlement Procedures Act ("RESPA") in 1974 to protect homeowners by assisting them in becoming better educated while shopping for real estate services, and eliminating kickbacks and referral fees, which add unnecessary costs to settlement services.

69. RESPA requires lenders and others involved in mortgage lending to provide borrowers with pertinent and timely disclosures regarding the nature and costs of a real estate

settlement process, and also governs the servicing and administration of borrowers' accounts by servicers.

70. Administering accounts and initiating electronic funds transfers pursuant to established authorization protocols are standard servicers' duties.

71. 12 U.S.C. § 2605(k)(1)(C) states that a servicer of a federally related mortgage shall not fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties.

### *The EFTA*

72. The purpose of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems.  The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

73. Congress has also authorized the Consumer Financial Protection Bureau ("CFPB") to promulgate the EFTA's implementing rules and regulations, including the rules codified in 12 C.F.R. § 1005 ("Regulation E").

74. "Electronic funds transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."  15 U.S.C. § 1692a(7).

75. 15 U.S.C. § 1693e provides that:

> (a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made ….

12

(b) In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer.

76.     12 C.F.R. § 1005.10 states:

(b) Written authorization for preauthorized transfers from consumer's account. Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

…

(d) Notice of transfers varying in amount.

(1) Notice. When a preauthorized electronic fund transfer from the consumer's account will vary in amount from the previous transfer under the same authorization or from the preauthorized amount, the designated payee or the financial institution shall send the consumer written notice of the amount and date of the transfer at least 10 days before the scheduled date of transfer.

### *The NCMDCSA*

77.     The North Carolina Mortgage Debt Collection and Servicing Act, N.C. Gen. Stat. § 45-90 *et seq.* (the "NCMDCSA") is a state law analog to RESPA, which creates a state law duty for mortgage loan servicers to comply with RESPA.

78.     N.C. Gen. Stat. § 45-91(5) states that servicers must comply with the obligations of mortgage servicers set forth in the North Carolina Secure and Fair Enforcement Mortgage Licensing Act, N.C. Gen. Stat. § 53-244.110 (the "North Carolina SAFE Mortgage Licensing Act").

79.     The North Carolina SAFE Mortgage Licensing Act, N.C. Gen. Stat. § 53-244.110, requires that mortgage servicers shall comply with all duties imposed by other statutes or at common law, and further requires that mortgage servicers shall safeguard and account for borrowers' monies,

follow borrowers' reasonable and lawful instructions, and act with reasonable skill, care, and diligence.

## COUNT I – RESPA.

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Nationstar initiated unauthorized duplicate payments from Plaintiff's account, and failed to properly process those payments notwithstanding Plaintiff's repeated requests and instructions.

82. The proper initiation and processing of mortgage payments is a standard servicer's duty.

83. As a result of the unauthorized transfers and payment processing issues, Plaintiff suffered damages including but not limited to the loss of the time-value of money, loss of time spent informing Nationstar about the errors, harm to their relationships with their financial institution and/or merchants, and emotional distress from discovering that third parties were able to obtain unauthorized access to their accounts and having to demand Defendant correct its errors.

84. Defendant violated 12 U.S.C. § 2605(k)(1)(C).

## COUNT II – EFTA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. Nationstar initiated payments scheduled to recur from Plaintiff's account without authorization, and failed to properly process those payments notwithstanding Plaintiff's repeated requests and instructions.

87. The proper initiation and processing of mortgage payments is a standard servicer's duty.

88. As a result of the unauthorized transfers and payment processing issues, Plaintiff suffered damages including but not limited to the loss of the time-value of money, loss of time spent informing Nationstar about the errors, harm to their relationships with their financial institution and/or merchants, and emotional distress from discovering that third parties were able to obtain unauthorized access to their accounts and having to demand Defendant correct its errors.

89. Defendant violated 15 U.S.C. §§ 1693e, and 12 C.F.R. §§ 1005.10(b) and 1005.10(d).

## COUNT III – Negligence

90. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Nationstar initiated payments scheduled to recur from Plaintiff's account without authorization, and failed to properly process those payments notwithstanding Plaintiff's repeated requests and instructions.

92. The proper initiation and processing of mortgage payments is a standard servicer's duty.

93. The NCMDCSA and North Carolina SAFE Mortgage Licensing Act provide that Nationstar has a duty to take reasonable precautions to ensure the security of its borrowers' accounts from improper unauthorized automatic withdrawals. *See, e.g. Robinson v. Deutsche Bank Nat'l Tr. Co.*, No. 5:12-CV-590-F, 2013 U.S. Dist. LEXIS 50797 *60-62 (E.D.N.C. Apr. 9, 2013); *Olympic Prods. Co. v. Roof Sys., Inc.*, 88 N.C. App. 315, 322, 363 S.E.2d 367, 371 (1988) ("A

duty of care may arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract.").

94. Nationstar was negligent in that it:

   a. Failed to take proper steps to ensure that borrowers can safely provide Nationstar with access to their checking accounts so that monthly mortgage payments can be made.

   b. Failed to adequately supervise its employees, vendors, and/or agents to ensure that the automatic withdrawal process was safe, reliable, and trustworthy.

   c. Failed to establish reasonable procedures to immediately suspend ACH debit requests from borrowers once a problem was identified.

   d. Failed to establish reasonable procedures to ensure that multiple entries of the same dollar amount and same receiver would not be initiated on the same day.

   e. Failed to ensure that appropriate risk management guidelines for payment processors were followed.

   f. Failed to comply with relevant NACHA Operating Rules.

   g. Failed to comply with Relevant Federal laws and regulations, including but not limited to 31 C.F.R. Part 210, the Uniform Commercial Code, and the Electronic Funds Transfer Act.

   h. Otherwise failed to act as an ordinarily reasonable mortgage servicer would under the conditions then and there existing as will be shown after discovery and at trial.

   i. Otherwise failed to act as an ordinarily reasonable originator of ACH debit payment transactions would under the conditions then and there existing as will be shown after discovery and at trial.

   j. Otherwise failed to act as an ordinarily reasonable originator of ACH debit payment transactions would under the conditions then and there existing as will be shown after discovery and at trial.

95. Nationstar was also negligent *per se* in that it failed to comply with the NCMDCSA

and North Carolina SAFE Mortgage Licensing Act.

96. As a result of the unauthorized transfers and payment processing issues, Plaintiff suffered damages including but not limited to the loss of the time-value of money, loss of time spent informing Nationstar about the errors, harm to their relationships with their financial institution and/or merchants, and emotional distress from discovering that third parties were able to obtain unauthorized access to their accounts and having to demand Defendant correct its errors.

97. Nationstar's negligence was the proximate cause of Plaintiff's injuries, and the injuries of others similarly situated.

98. Nationstar is aware of the reasonable foreseeability that a series of automatic withdrawals would have disastrous consequences for borrowers, including Plaintiff; including stress, anxiety, and emotional injuries resulting from a loss of funds, even a temporary one.

## CLASS ALLEGATIONS

99. Plaintiff brings this action on behalf of three classes.

100. Class I ("Unauthorized April Payments Class") consists of:

> (a) all natural persons in the United States of America, (b) whose residential mortgage loan servicing rights were held by Nationstar (c) and from whom Nationstar initiated an unauthorized electronic funds transfer, (d) in April 2021.

101. Class II ("Unauthorized Duplicate Payments Class") consists of:

> (a) all natural persons in the United States of America, (b) whose residential mortgage loan servicing rights were held by Nationstar (c) and from whom Nationstar initiated a duplicate electronic funds transfer, (d) because a borrower's funds transfer confirmation occurred while Nationstar's payment processing system was purportedly "down."

102. Class III ("Improper Payment Processing Class") consists of:

> (a) all natural persons in the United States of America, (b) whose residential mortgage loan servicing rights were held by Nationstar (c) and from whom

Nationstar failed to process a duplicate payment against the principal of the loan, and instead processed the payment against interest or escrow even though there was no interest or escrow actually due at the time the payment was processed.

103. Plaintiff also brings each claim on behalf of a North Carolina subclass of each Class.

104. Each "Class Period" dates back to the longest applicable statute of limitations for any claims asserted on behalf of each Class or Subclass from the date this action was commenced and continues through the date this action was commenced.

105. Each class and subclass are each so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class and subclass.

106. There are questions of law and fact common to the members of each class and subclass, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendant complied with federal and state law.

107. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

108. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

109. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

110. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: November 3, 2021

**ADEMI LLP**

By: /s/ John D. Blythin
John D. Blythin (Wis. SBN 1046105)
Jesse Fruchter (Wis. SBN 1097673)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
jfruchter@ademilaw.com